United States Court of Appeals,

Fifth Circuit.

No. 92-1657.

George F. JAMES, Plaintiff-Appellant,

v.

McCAW CELLULAR COMMUNICATIONS, INC. et al., Defendants-Appellees.

April 19, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before KING and EMILIO M. GARZA, Circuit Judges, and COBB[*]District Judge.

COBB, District Judge:

I.

BACKGROUND

In 1986, the Federal Communications Commission (FCC) conducted lotteries for the right to acquire cellular telephone licenses in various areas. With the exception of the thirty largest metropolitan statistical areas (MSAs), the FCC would grant two licenses in each MSA; one to the local telephone company, and another to the winner of an FCC lottery covering the particular MSA.

During the license application process, various applicants joined together to form settlement groups to increase their chances of winning at least a portion of a license. The winning member of a settlement group received slightly over fifty percent interest in the license for the particular MSA, and the other members shared pro-rata in the remaining interest.

Cellular America, Inc. was one of the entities that formed such settlement groups. In each of the MSA's at issue here,[1] the FCC awarded a license to a member of a settlement group organized by Cellular America. In 1988 and 1989, subsidiaries of McCaw Cellular Communications, Inc. (MCCI) purchased the majority interest, as well as some of the minority interests, in licenses for these

[*]District Judge of the Eastern District of Texas, sitting by designation.

[1]Appellant claims the only MSA at issue is the Erie, Pennsylvania MSA. Appellee argues that in addition to Erie, the Salinas and Santa Barbara, California MSAs are also in dispute.

areas from the FCC lottery winners or their successors.

Appellant George F. James contends that he owns a number of minority interests in these MSAs because he purchased them from certain members of the Cellular America settlement groups.[2] The district court disagreed and granted MCCI's motion for summary judgment on two grounds: (1) James had a defective chain of title; and (2) his applications to the FCC for the interests at issue were invalid.

II.

JAMES'S CHAIN

1. *Events leading to James's claim of title*

The events that led up to James's alleged ownership of the various interests are muddled. According to the record, the parties' briefs, and the district court's summary judgment opinion,

1) James received his interests from Hugh F. O'Neal by way of multiple "bills of sale" executed on May 28 and 29, 1986;

2) O'Neal acquired the interests by receiving a power of attorney from Ralph Freedson on April 25, 1986; and

3) Freedson acquired his interest from multiple powers of attorney executed in his favor by various named individuals on April 23, 1986.[3]

Nothing of record indicates how Freedson's alleged predecessors, i.e., the named individuals, obtained their claimed interests.[4]

---

[2]The district court found that James did not personally submit any of these interests' applications for a license to the FCC.

[3]The district court stated that for each of the interests that James claims to own, these individuals purportedly executed "ratifications" of their powers of attorney to Ralph Freedson, and "bills of sale" to James Hadsell in May, 1987.

[4]MCCI accurately points out that there are certain portions of this chain of events that are necessary to James' claims although there is no evidence of their occurrence in the record:

> 1. On some unknown date, Ralph Freedson or James Hadsell (Hadsell) formed a "trust" in order to apply for cellular interests with the FCC. There are no supporting documents or testimony to show when, or if these trusts were formed.

> 2. On January 30, 1986, Hadsell, as "trustee," filed a license application with the FCC. James produced no applications or copies.

> 3. On April 11, 1986, Hadsell, as "trustee," allegedly signed Cellular America's

2. *James's chain was defective*

MCCI refused James entry into its various partnerships and declined to acknowledge his interest in the Erie, Salinas, and Santa Barbara cellular telephone licenses. The key issue, therefore, is the validity of James's title.

The district court held that James did not have a valid title because his chain of title was defective. The court also found that both the Settlement Agreement applications and the FCC applications which underlie James's purported interests were submitted by Hadsell as "trustee" for an alleged trust. James produced no evidence that valid trusts existed. James asserts that by using the word "trustee," a valid trust is instantly created under Texas law, without any known terms or conditions and without the identification or knowledge of the beneficiary. Even if James is correct, which may be doubtful, it is not necessary for us to decide because FCC rules control this case, not state trust law.

All of the various documents which James produced to prove his chain of title (i.e., powers of attorney, ratifications, and bills of sale) indicated that individuals, not the "trusts," transferred certain interests. Using a timeline similar to the one above, MCCI has correctly stated there is no evidence to show the source of any of the named individuals' (i.e., Freedson's predecessors) purported interests claimed by James.

James cites numerous legal arguments regarding the existence of the alleged trusts.[5] However, he never addresses the issue that there was no evidence before the district court to support

settlement agreement to acquire the interests in dispute. James offered no documents to support this claim.

4. On some unknown date, after the trust purchased the interests from the Cellular America settlement group, it must have transferred those interests to the individuals who, in turn, sold their interest to Freedman. No documents or testimony was ever produced to prove these transactions occurred.

[5]According to James, in 1987, Hadsell, the trustee, purchased the equitable title in the Erie license by way of bills of sale from the various trust beneficiaries. Because he was the legal owner as trustee, by the doctrine of merger, he became the full owner of the interests, subject only to the claim of James. Hadsell subsequently assigned those interests, i.e., the ones in dispute, to Randolph Cellular Interests, Inc. (Randolph Cellular), a Texas corporation owned by Hadsell and O'Neal. Despite the fact that Hadsell and O'Neal previously transferred these interests to James, O'Neal, in deposition, claimed an ownership interest on behalf of Randolph Cellular.

the existence of these trusts or the various individuals' interests in these licenses.

On appeal from a summary judgment, the reviewing court cannot consider arguments or factual allegations raised for the first time on appeal. *Topalian v. Ehrman,* 954 F.2d 1125, 1131, *reh'g denied,* 961 F.2d 215 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Since James failed to prove the existence of the trusts or the validity of his chain of title, the district court's determination that his chain of title was fatally defective is affirmed.

## III.

## THE FCC APPLICATIONS WERE DEFECTIVE

The district court held that although James asserts title to certain minority interests, he failed to produce any evidence of the applications to the FCC for any of the interests at issue. For James to have a valid interest in these licenses, his predecessors in interest must have submitted valid applications to the FCC for the licenses. The district court correctly held that, under FCC regulations, these applications were fatally defective.

Section 1.743 of the FCC regulations require:

(a) Except as provided by paragraph (b) of this section, applications ... shall be personally signed by the applicant, if the applicant is an individual ... [or] by an officer or duly authorized employee, if the applicant is a corporation.

(b) Applications ... may be signed by the applicant's attorney in case the applicant's physical disability, or in the case the applicant does not reside in any of the contiguous 48 states of the United States or in the District of Columbia.

47 C.F.R. § 1.743 (1991). Applications for an individual may not be signed by the individual's agent. *In re Pierce,* FCC 89-67 (1989) (Section 1.743(a)'s requirement is strictly construed and is not subject to state agency law). If a trust is the true applicant, *the trust* must be specifically listed as the applicant and the application must be signed by the trustee. *In re Chickasaw Tel. Co.,* FCC 92-568 (1992) (an application listing the applicant as "Chickasaw Telephone Company for the benefit of CTC Scholarship Trust" is fatally defective because the trust is not clearly listed as the applicant).

Under the above, James's claim must fail. The district court found that each FCC application for the interests at issue listed different *individuals* as the applicants rather than the name of a particular trust. The applications, however, were each signed by Hadsell as "trustee." Under the test

in *Chickasaw* and 47 C.F.R. § 1.743, the applications were fatally defective.

Even the record excerpt provided for this court shows a sample FCC application with several fatal defects. The applicant is listed as "R.C. Arlington." The cover page is submitted in the name of the "R.C. Arlington trust." The application is signed by Hadsell as trustee for "R.C. Arlington," not the "R.C. Arlington trust." Box 3 of FCC form 401 indicates that the applicant is an individual. James argues the application is signed as an "individual" because there was no area on the application form designated for "trust." James's counsel stated that the Arlington application, as completed, is sufficient to meet the FCC requirements.

The FCC has previously rejected such an argument, as we must. In *In re Trinchitella,* FCC 89-270 (1989), the reject ed applicant for a cellular license argued that the FCC should apply a "substantially complete" test. Under that test, the FCC would allow deficient applications to be resubmitted with a curative amendment and to be afforded *nunc pro tunc* consideration in a new hearing. The FCC replied:

> [A]pplications are required to be acceptable for filing when tendered.... In the cellular service, this means that an application must satisfy our letter perfect requirements, have complete information showings, and comply with the Commission's rules in order to avoid dismissal pursuant to Section 22.20. Moreover, when a[n] ... application is dismissed pursuant to that provision, the applicant has no right to resubmit a defective application with a curative amendment after the cutoff date for filing competing applications.

*Id.* The original applications were fatally defective, and so is James's claim to those interests.

The applications are also invalid under the FCC's ownership interest restrictions. Specifically, the FCC prohibits a party from having ownership interests in more than one application for the same market. 47 C.F.R. § 22.921(b) (1991). Assuming, *arguendo,* that valid trusts existed, James claims there were at least eleven trust applications in which he had an interest for the Erie, Salinas, and Santa Barbara cellular licenses. This would be a direct violation of Section 22.921(b) and is another reason we uphold the summary judgment.

IV.

*AMERICAN CELLULAR V. HADSELL* RELIANCE?

Appellant argues the district court erred in relying on *American Cellular Network Corp. v. Hadsell,* No. CA3-87-2272-C (N.D.Tex. Jul. 2, 1990), claiming:

> *American Cellular* ... did not deal with the Erie MSA and did not support the judgment in this case because the defaulting defendants against whom the findings of fact and conclusions of law were made did not resist any argument or evidence of the plaintiff on any issues.

Brief for Appellant at 22, *James* (No. 92-1657). The pertinent language in the court's opinion stated:

> FCC regulations require that each application be personally signed by the applicant if the applicant is an individual. 47 C.F.R. § 1.743 (1991). As such, the FCC applications were defective and cannot form a basis for owning a minority interest. *See American Cellular Network Corp. v. Hadsell,* No. CA3-87-2272-C (N.D.Tex. Jul. 2, 1990).

It is irrelevant whether the *American Cellular* court dealt with the Erie MSA or whether the defendants resisted any argument or evidence. The district court simply cited it as another case which is consistent with its holding in interpreting FCC rules. James's assertion that the district court improperly relied on *American Cellular* is without merit.

## V.

## RULINGS ON JAMES'S MOTIONS

After MCCI filed its motion for summary judgment, James filed a motion to add Randolph Cellular as a party and to remand.[6] The district court granted summary judgment in favor of MCCI and impliedly denied James's motions. James asserts on appeal the district court should have granted his motions because both Randolph Cellular and James make claim to the same interests. He urges that in the interest of judicial economy, all of these issues should have been decided in one forum.

Rule 15 of the *Federal Rules of Civil Procedure* indicates that the district court should freely grant leave for a party to amend its pleadings. This court has held such decision rests in the sound discretion of the district court. *Topalian v. Ehrman,* 954 F.2d 1125, 1139 (5th Cir.1992). We review only on a basis of abuse of discretion. *Id.* James's motions to amend and remand were filed on December 19, 1991, almost fifteen months after he filed his original complaint, ten months after the joinder deadline, five months after the deadline for amendments, three weeks after MCCI filed its Motion for Summary Judgment, and one week after James responded to the Motion for Summary Judgment. James does not point to a specific abuse of the district court's discretion. We hold the district court did not abuse its discretion in granting McCaw's motion for summary judgment without

---

[6]See footnote 5 *supra.*

ruling on James's untimely and dilatory motions.

Accordingly, the district court's judgment is AFFIRMED.