**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 91-3583

RESOLUTION TRUST CORPORATION as
Receiver for Security Homestead Federal
Savings and Loan Association,

Plaintiff-Appellee,

VERSUS

JOHN J. EITMANN, JR.

Defendant-Appellant.

Appeal from the United States District Court
For the Eastern District of Louisiana
CA 89 5303 "L"

( June 15, 1993 )

Before KING, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Defendant John J. Eitmann, Jr. appeals an adverse summary judgment in Security Homestead Association's suit to assess a deficiency judgment against him and to enforce that judgment against property which Eitmann owns. Concluding that the trial court erred in entering summary judgment and that a third party needs to be brought in to adequately determine the rights of all

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

parties in this proceeding, we vacate the summary judgment and remand for further proceedings consistent with this opinion.

In June 1984 Eitmann and his sister obtained a loan from Security Homestead, secured by property the Eitmanns owned at 1408 Beron Dr., in the Parish of Jefferson, Louisiana. Security Homestead required that Eitmann pay the premiums on a policy of private mortgage insurance issued by United Guaranty Residential Insurance Company to Security Homestead. Although Eitmann paid the premiums on the insurance policy, the insurance agreement was solely between United Guaranty and Security Homestead. The only documents evidencing the agreement between Eitmann and Security Homestead regarding payment of these premiums were the notations inserted on the closing statement prepared by the title company when Eitmann originally acquired the property with money borrowed from Security Homestead. In 1988 Eitmann defaulted on the loan payments and Security Homestead instituted foreclosure proceedings in Louisiana State Court. At the time of commencement of these foreclosure proceedings, in March 1988, Eitmann was living at 1609 Airline Park Blvd., Metairie, Louisiana, and not at the address of the Beron Drive property. Security Homestead purchased the Beron Drive property at judicial auction in August 1988, and in January 1989, Security Homestead obtained a deficiency judgment against Eitmann for the balance owed after crediting the value of the Beron Drive property.

On February 9, 1989, United Guaranty paid $12,149.34 to Security Homestead pursuant to a claim made by Security Homestead

2

on the private mortgage insurance policy. Shortly thereafter Security Homestead requested the Louisiana Clerk of Court to issue a <u>writ</u> <u>of</u> <u>fieri</u> <u>facias</u> to seize and sell the property owned by Eitmann on Airline Park Blvd. where he was then residing. The day before the judicial sale of Eitmann's Airline Park property was to take place, Eitmann filed a motion to enjoin the sale and a petition to annul the deficiency judgment. Eitmann alleged that the deficiency judgment failed to reflect that he was entitled to a credit for $12,149.34 paid to Security by Homestead by United Guaranty. The state court issued a temporary restraining order, enjoining the sale of the Airline Park Blvd. property.

In December 1989, the Resolution Trust Corp. ("RTC") was substituted for Security Homestead as plaintiff in the state court action and removed the state case to federal court. In May 1990 the RTC filed a motion for summary judgment on the grounds that, under the policy issued by United Guaranty, Eitmann had no right to obtain a credit for amounts paid to Security Homestead by United Guaranty. Because the policy was not before the district court, that motion was denied. The RTC filed a second summary judgment motion when the original of the policy between United Guaranty and Security Homestead was submitted to the court pursuant to an affidavit by the vice president of Security Homestead Federal Savings Assn., who was the successor to the assets of Security Homestead. Pursuant to a pretrial order entered into by the parties and the court on November 23, 1990, some 40 uncontested material facts were identified and agreed upon but there were also

3

seven contested material facts identified, and 13 contested issues of law. The pretrial order also set December 3, 1990, at 10:00 a.m. as the trial date for the matter before the district judge without a jury. One of the contested material facts was whether United Guaranty "is attempting to directly collect its payment from Eitmann."

OPINION

This dispute revolves around the question of whether or not United Guaranty has a right of subrogation against Eitmann for the sums it paid to Security Homestead on the private mortgage insurance contract. In the letter of February 9, 1989, by which United Guaranty sent its check to Security Homestead, United Guaranty advised Security Homestead that it intended to contact the borrower (Eitmann) in an effort to recover its loss and concluded that letter to Security Homestead with the following words:

> Your involvement will not be necessary unless the matter reaches the point of litigation, at which time we will contact your office to discuss assignment of subrogation rights. If this does not meet with your approval, please let us know within 15 days of the date of this letter.

Then on April 7, 1989, United Guaranty sent a letter to Eitmann at his address on Airline Park Blvd. advising him as follows:

> Under State Law and the particular facts of this case the lender has a legal right to recover its loss from you up to $12,149.34 plus interest from the date of the foreclosure sale and that right now rests with us as a result of our claim payment to the lender. (Emphasis added.)

4

This letter went on to request Eitmann to contact United Guaranty and discuss a repayment arrangement. The subrogation rights of United Guaranty are defined in paragraph 19 of the private mortgage insurance agreement, which provides as follows:

> 19. Limited Subrogation Rights: The Company [United Guaranty] shall be subrogated to all of the rights of the insured [Security Homestead] against the Borrower [Eitmann] and/or all other parties liable for the payment of the Loan arising out of or connected with the loan to the extent of the payment of benefits by the company under the Policy (I) In all cases where the Real Estate [the Beron Drive property] does not consist of a single family dwelling occupied by the borrower, and (II) when the Insured agrees that the company shall have subrogation rights. Except as herein provided, the company shall have no subrogation rights against the Borrower.

Relying on various affidavits furnished by Security Homestead personnel that "neither Security Homestead nor its successors have ever agreed that United Guaranty would have subrogation rights in connection with the Eitmann loan," the trial court concluded, that "since United Guaranty has no right to recover from Eitmann the amount it paid to Security Homestead, defendant is not in any danger of paying twice." We disagree with this conclusion of the trial court for two reasons:

A. First, there is nothing in the summary judgment record which determines whether the Beron Drive property was or was not a "single family dwelling occupied by the borrower" within the meaning of subclause (I) of paragraph 19. The record infers that at the time of the commencement of the foreclosure proceeding and thereafter, Eitmann was residing in

5

the Airline Park Blvd. property and this could well afford United Guaranty a basis for claiming a right of subrogation; and

B. Second, the letters described above from United Guaranty to Security Homestead and to Eitmann both strongly infer that United Guaranty thought it had the right to assert a subrogation claim against Eitmann.

Paragraph 19 of the private mortgage insurance agreement is certainly not a paragon of clarity; and we think a genuine issue of material fact exists as to the intentions of the parties regarding subrogation rights of United Guaranty against Eitmann under the facts of this case.

More fundamentally, absent the joinder of United Guaranty in this proceeding, we do not see how any conclusions which might be made in this proceeding would be binding upon United Guaranty; and in order to avoid the possibility that Eitmann might be required to pay the full deficiency balance being asserted by the RTC and also the $12,149.34 subrogation claim being asserted by United Guaranty, we think justice will be better served by vacating the summary judgment herein, and remanding this case to the district court with instructions that the district court afford Eitmann an opportunity to file a third party claim against United Guaranty to determine its subrogation rights against him.

Judgment of the trial court is vacated and case remanded to the trial for further proceedings consistent herewith.

KING, Circuit Judge, dissenting:

The issue presented by the parties in this case is straightforward: whether, by asserting that Security's deficiency judgment against him should be annulled pursuant to Louisiana law, Eitmann has raised a genuine issue of material fact. Because I believe that Eitmann has failed to establish a basis upon which to annul Security's deficiency judgment, I respectfully dissent from the majority's decision to vacate the judgment of the district court and remand this case to give Eitmann another bite at the apple.

"On an appeal from summary judgment, the reviewing court cannot consider arguments or factual allegations raised for the first time . . . ." James v. McCaw Cellular Communications, Inc., 988 F.2d 583, 585 (5th Cir. 1993); see also McCann v. Texas City Refining, Inc., 984 F.2d 667, 673 (5th Cir. 1993) ("It is the unwavering rule in this Circuit that issues raised for the first time on appeal are reviewed only for plain error."). We have also held repeatedly that "issues not briefed, or set forth in the list of issues presented, are waived." Atwood v. Union Carbide Corp., 847 F.2d 278, 280 (5th Cir. 1988), cert. denied, 489 U.S. 1079, 109 S. Ct. 1531 (1989).

Eitmann's only challenge to the deficiency judgment against him is that it should be annulled pursuant to Article 2004 of the Louisiana Code of Civil Procedure.[1] Eitmann asserts that, because

---

[1] Although, on appeal, Eitmann has also raised a disclosure challenge to his arrangement with Security pursuant to the Truth in Lending Act, 15 U.S.C. § 1601, et seq., Eitmann did not adequately raise this issue below. Therefore, it is not properly before this court. James v. McCaw, 988 F.2d at 585; see also McCann v. Texas,

Security received a payment of $12,149.34 from Guaranty after obtaining its deficiency judgment against him, Security's enforcement of its deficiency judgment would constitute an "unconscionable and ill practice." Therefore, according to Eitmann, Security's deficiency judgment should be annulled pursuant to Article 2004 of the Louisiana Code of Civil Procedure, which provides that "[a] final judgment obtained by fraud or ill practices may be annulled."

A judgment has been obtained by fraud or ill practices pursuant to Article 2004 when (1) the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) the enforcement of the judgment would be unconscionable and inequitable. State v. Batchelor, 597 So.2d 1132, 1135 (La. App.), writ denied, 604 So.2d 964 (La. 1992); Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La. 1983). Security obtained its deficiency judgment against Eitmann so that it could collect the unpaid balance of the loan it made to him, and Eitmann never appealed from that judgment. Eitmann brought this action only when Security sought to enforce its deficiency judgment by seizing his Airline Park property. Moreover, Security received no money pursuant to its policy with Guaranty until after it had obtained its deficiency judgment against Eitmann, and the record establishes that Eitmann is neither a party to nor beneficiary of

984 F.2d at 673.

that policy.[2]

The majority believes that Guaranty's _potential_ subrogation rights against Eitmann pursuant to the mortgage insurance policy present a basis for Eitmann's assertion that the deficiency judgment against him was rendered under circumstances showing a deprivation of his legal rights in accordance with Article 2004. It is well established under Louisiana law that "[a]n action for nullity cannot be substituted for a timely appeal[,]"[3] and that "a judgment should not be annulled under ordinary circumstances simply because there was lack of diligent presentation of a valid defense which could have been pleaded before judgment."  _Williams_, 427 So.2d at 940; _Muller v. Michel Lecler, Inc_., 266 So.2d 916, 918

---

[2]  Under Louisiana law, a third-party-beneficiary contract will be found "only when the contract _clearly_ contemplated the benefit to the third person as its condition or consideration[,]" and the benefit bestowed to the third party must be more than merely incidental to the contract.  _New Orleans Public Service, Inc. v. United Gas Pipe Line Co._, 732 F.2d 452, 467 (5th Cir. 1984) (emphasis in original), _cert. denied_, 469 U.S. 1019, 105 S. Ct. 434 (1984); _see_ _Wallace v. Texaco, Inc._, 681 F.2d 1088, 1090 (5th Cir. 1982) (the contract must reveal that the contracting parties intended to benefit the third party); _see also_ LA. CIV. CODE ANN. ART. 1978 (West 1990) ("A contracting party may stipulate a benefit for a third person called a third party beneficiary.").  The unambiguous language of paragraph 26 of the mortgage insurance policy in the case before us expressly states that Eitmann is not a beneficiary, and paragraph 18 expressly states that Security did not give up its right to collect the full amount of the loan from Eitmann by entering into its agreement with Guaranty. Specifically, paragraph 26 provides that "[t]he Borrower or any successive owner of the Real Estate is not included as a beneficiary or an insured under the Policy."  Paragraph 18 provides that "[a]ny payment pursuant to Section 18(a) or Section 18(b) hereof shall not be applied, or be considered by the borrower to be applied, to the payment of the Loan."

[3]  _Williams v. N.Y. Fire & Marine Ins. Co._, 427 So.2d 938, 939 (La.App. 1983).

9

(La.App. 1972). Because (1) Eitmann's challenge is based upon an insurance policy to which Eitmann was neither a party nor beneficiary, (2) as is evidenced by his payment of premiums on the insurance policy and the fact that it was a precondition for obtaining his loan from Security, Eitmann knew of the policy's existence at the time Security brought its deficiency action against him but never raised any issue about mortgage insurance or subrogation when challenging that action, (3) Eitmann never appealed from the underlying deficiency judgment, and (4) Security received no payment under the terms of its policy with Guaranty until after obtaining a deficiency judgment against Eitmann, I cannot join the majority in concluding that Eitmann's Article 2004 claim has any merit and that a rational trier of fact could find in his favor. See Williams, 427 So.2d at 939-40; see also Amoco Production Co. v. Horwell Energy, Inc., 969 F.2d 146, 147-48 (5th Cir. 1992) (If a rational trier of fact, based upon the record as a whole, could not find for the non-moving party, there is no genuine issue for trial).

Private mortgage insurance like that structured by Security and Guaranty is somewhat troubling in that borrowers like Eitmann pay premiums for insurance from which the only benefit that they derive is obtaining a loan that they might not otherwise be able to obtain. Nevertheless, we are not Eitmann's attorneys; we are judges and we do not have a roving warrant to correct Eitmann's litigation mistakes in this lawsuit and the predecessor suit on a note because we are troubled by private mortgage insurance

generally.  Eitmann has failed to establish a legitimate claim pursuant to section 2004, and this is the only claim Eitmann's attorneys have properly brought before us.  Accordingly, I would conclude that the RTC in its capacity as conservator and receiver for Security was entitled to summary judgment as a matter of law, and I would affirm.  <u>See</u> FED. R. CIV. P. 56 (c); <u>Amoco</u>, 969 F.2d at 147-48.