**HOCKERSON–HALBERSTADT, INC., Plaintiff–Appellant,**

v.

**JSP FOOTWEAR, INC. and FUBU The Collection, L.L.C., Defendants–Cross Appellants.**

Nos. 03–1383, 03–1412.

United States Court of Appeals, Federal Circuit.

DECIDED: June 23, 2004.

Rehearing En Banc Denied Sept. 17, 2004.

Stuart G. Richeson, Principal Attorney, Lloyd Noble Shields, Daniel Lund, III, of Counsel, Shields, Mott, New Orleans, LA, for Defendants–Cross Appellants.

James E. Uschold, Principal Attorney, New Orleans, LA, Donald L. Nauman, of Counsel, Santa Rosa, CA, for Plaintiff–Appellant.

Before NEWMAN, MICHEL, and RADER, Circuit Judges. ·

Opinion for the court filed by Circuit Judge RADER, Dissenting opinion filed by Circuit Judge MICHEL.

RADER, Circuit Judge.

The United States District Court for the Eastern District of Louisiana granted summary judgment in favor of JSP Footwear, Inc. (JSP) and FUBU The Collection, LLC (FUBU), dismissing Hockerson–Halberstadt's (HHI's) claims that JSP and FUBU infringed U.S. Patent No. 4,322,-895. The district court further denied HHI's motion to add GTFM, Inc. (GTFM) as defendant and denied JSP's and FUBU's motions for attorney fees under 35 U.S.C. § 285. *Hockerson–Halberstadt, Inc. v. JSP Footwear, Inc.*, No. 02–1415 (E.D. La. Feb. 20, Mar. 13 & Apr. 21, 2003). Because the district court erred in granting summary judgment and erred in denying the motion to add GTFM as a defendant, this court *reverses* those judgments. Without a prevailing party left in this action, this court also *vacates* the denial of attorney fees.

## I.

The '895 patent claims, in general terms, a stabilized athletic shoe. *See Hockerson–Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369 (Fed.Cir.1999) (upholding the claims of the '895 patent because they were not broadened during reexamina-

tion). In 1998, HHI suspected that shoes bearing the FUBU trademark might infringe its patent. On July 9, 1998, HHI's counsel requested information from FUBU about its product through an email address found on FUBU's website (www.fubu.com). After receiving a response, HHI's counsel sent a letter to FUBU's president, Daymond John, now Daymond Aurum.

HHI's July 24, 1998, letter informed FUBU that it was potentially infringing the '895 patent, that the patent would expire on July 27, 1999, and that a district court had ruled the patent invalid. HHI also informed FUBU that it had appealed that invalidity ruling. On July 20, 1999, this court reversed the district court and held that the patent was not invalid. *Hockerson–Halberstadt*, 183 F.3d 1369. On August 18, 1999, HHI supplemented the original letter with the information that this court reversed the invalidity ruling.

After exchanging a series of letters, FUBU informed HHI that it had referred the matter to its footwear licensee and identified that licensee as JSP on November 10, 2000. HHI then sent a letter to JSP on November 13, 2000. Eventually, HHI filed suit against JSP and FUBU for infringing the '895 patent on May 7, 2002.

During discovery, HHI learned that FUBU did not actually own the FUBU mark. Rather, a related corporation, GTFM, owned the FUBU mark. Daymond Aurum is the CEO and president of FUBU as well as the CEO of GTFM. GTFM licensed the FUBU mark to JSP from 1997 to 2001 for use on footwear. Under the licensing agreement, GTFM had the right to veto JSP's designs based on the design or quality of the shoes. The license agreement provides GTFM with plenary power to reject proposed designs for reasons relating to style. The license only limits denials as to quality with the admonition that such approvals "shall not be unreasonably withheld." In other words, JSP could not manufacture any shoes without GTFM's approval. Yet GTFM, as a corporate entity, only had the right to approve designs for quality and style. On the other hand, FUBU, as a corporate entity, had no involvement in the manufacture or design of the accused shoes.

On January 30, 2003, HHI filed a motion for leave to amend the complaint to add, *inter alia*, GTFM as a defendant. The district court denied this motion on February 6, 2003, because it determined that HHI's motion was not timely. The district court expressed two primary concerns on timeliness: the imminence of the jury trial that was set for May 12, 2003, and the expiration of the deadline for amendments to the pleadings on September 20, 2002. Although HHI explained that it did not learn of the relationship between FUBU, GTFM, and JSP until December 12, 2002, the district court held: "HHI has not demonstrated that either it could not have learned earlier of the relationship of the prospective defendants to their claims or that it could not have sought an extension of the deadline to amend."

Concurrently with that motion and decision, JSP filed a motion for summary judgment seeking dismissal of the suit on the basis that it did not receive notice of infringement under 35 U.S.C. § 287. HHI responded to JSP's motion by arguing, in part, that the notice provided to Daymond Aurum provided notice to JSP under agency principles. On February 20, the district court granted summary judgment in favor of JSP because HHI did not directly notify JSP before the patent expired.

Around the same time, FUBU filed a motion for summary judgment seeking dismissal because it had done nothing that would constitute infringement. HHI responded to FUBU's motion by arguing

that GTFM and FUBU were alter egos. HHI further argued that FUBU induced infringement by GTFM. On March 13, the district court granted summary judgment in favor of FUBU because the record contained no evidence of either indirect or direct infringement by GTFM.

HHI then filed a motion for new trial, which the district court treated as a motion to amend the judgment under Fed. R.Civ.P. 59(e). HHI particularly challenged the holding that GTFM's reliance on a ruling that the '895 patent was invalid should be considered "due care" in avoiding being an indirect infringer. The district court disagreed, reiterating that a district court's invalidation of the patent precluded indirect infringement.

## II.

This court reviews a grant of summary judgment without deference, drawing all reasonable factual inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1353 (Fed.Cir.1998).

■ The district court determined that, even without deciding whether FUBU and GTFM were alter egos, FUBU could not be liable because GTFM would not be liable as either a direct or indirect infringer. Before this court, HHI argues that, due to GTFM's power to control JSP, GTFM either directly infringed under 35 U.S.C. § 271(a) or induced infringement under 35 U.S.C. § 271(b). Direct infringement, however, requires more than mere control; direct infringement requires making, using, offering to sell, or selling a patented invention. Accordingly, GTFM's authority to control JSP cannot support a claim of direct infringement.

Induced infringement, on the other hand, requires "actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed.Cir.1990). Thus, control may indeed serve as a predicate for induced infringement under appropriate circumstances. *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575. (Fed.Cir.1996); *Water Techs. Corp. v. Calco Ltd.*, 850 F.2d 660, 668 (Fed.Cir.1988). The record in this case, however, has not been sufficiently developed to evaluate whether GTFM's control over JSP is enough to incur liability as an indirect infringer.

■ The district court erred when it determined that a district court's opinion of invalidity relieved GTFM of any liability. The earlier district court's mistaken judgment of invalidity of the '895 patent does not shield GTFM from potential liability for infringement under the circumstances of this case, even if that erroneous judgment may preclude liability for willful infringement. This court, therefore, reverses the district court's opinion that FUBU is not liable solely because GTFM cannot be liable.

■ The district court determined that because JSP did not receive notice under 35 U.S.C. § 287, it could not be liable for any potential infringement. Under this court's law, the determination of adequate notice to the infringer focuses on the acts of the patentee. This court has explained: "The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed.Cir.1994). In this case, HHI sent a letter dated July 24, 1998, to Daymond Aurum, which both parties agree he received as an agent of GTFM. The content of this letter notified

the recipient of possible patent infringement. At that point, HHI had no knowledge of JSP or of any other party involved in the manufacture of the accused shoes. HHI had, at that point, a reasonable belief that GTFM was responsible for the manufacture of the accused shoes. Moreover, HHI could not have discerned the relationship between JSP and GTFM from any publicly available documents. Because the license agreement between GTFM and JSP was confidential, GTFM stood as the gatekeeper for JSP's existence. HHI's actions thus satisfied the requirement that the patentee's actions, not a third-party's, notified the alleged infringer.

JSP argues that this court's law does not allow notice to be sufficient when sent to the wrong party. The case upon which JSP primarily relies, *Lans v. Digital Equipment Corp.*, 252 F.3d 1320 (Fed.Cir. 2001), holds that the patentee, not someone associated with the patentee, must notify the infringer. That situation is, of course, the converse of the present situation. Here, the patentee notified the apparent infringer who also had a close association with the alleged infringer. Moreover, unlike *Lans*, a party closely related to the alleged infringer was the party who did not effectuate the policy behind the notification rule in this case. In other words, HHI again had every reason to believe that notice to an entity associated with the FUBU mark would sufficiently notify the allegedly infringing party.

If this court applied the *Lans* rule inflexibly to the present situation, that outcome could create a perverse incentive and method to disguise the true identity of an infringing party. Several layers of corporate disguise could successfully frustrate adequate notice. This court, therefore, reverses the district court's judgment that the notice sent to Daymond Aurum cannot be imputed to JSP.

This court uses regional circuit law in reviewing a denial of a motion for leave to amend to add a party. *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1357 (Fed.Cir.2001). The Fifth Circuit reviews such a denial for an abuse of discretion. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir.1981).

In *Dussouy*, the Fifth Circuit stated that "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." 660 F.2d at 598. In that case, the motion for leave to amend was proposed one week before the trial date. The court held that delay alone (unless it is undue delay causing prejudice) is not enough to justify denying a motion to amend a complaint. Although JSP does direct this court's attention to other cases that only explicitly mention delay as the justification for upholding a denial, those cases do not overrule the earlier decision in *Dussouy*. *See Oliver Res. PLC v. Int'l Fin. Corp.*, 62 F.3d 128, 133 (5th Cir.1995); *James v. McCaw Cellular Communications, Inc.*, 988 F.2d 583, 587 (5th Cir. 1993). In this situation, moreover, JSP does not identify any prejudice that it would suffer if GTFM were added to the lawsuit. Indeed, JSP's counsel will represent GTFM, and JSP is obligated to indemnify GTFM for acts relating to the manufacture, offer, sale, advertising, or promotion of the accused shoes. Thus, JSP would suffer only nominal prejudice, if any, from adding GTFM as a party. Because the delay in this case was not undue or prejudicial, this court reverses. On remand, the district court may determine whether GTFM infringed indirectly, as explained above.

FUBU and JSP cross-appeal the district court's denial of attorney fees under 35 U.S.C. § 285. This court reviews a denial of attorney fees for an abuse of discretion

but reviews the factual determination whether a case is exceptional for clear error. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1328 (Fed.Cir.2003). Even though the district court did not abuse its discretion in declining to order HHI to pay FUBU's and JSP's attorney fees, this court must vacate that decision in light of this opinion. Neither party, at this point, has prevailed. *See DH Tech., Inc. v. Synergystex Int'l, Inc.*, 154 F.3d 1333, 1344 (Fed.Cir.1998) ("Because the case has not yet been resolved and the prevailing party has not yet been determined, we necessarily vacate the district court's decision regarding exceptional case status.").

This court reverses the grant of summary judgment in favor of FUBU, reverses the grant of summary judgment in favor of JSP, and reverses the denial of the motion to add GTFM as a defendant. This court vacates the denial of the motions for attorney fees.

MICHEL, Circuit Judge, dissenting.

The majority reverses the judgment in favor of JSP, holding that notice to GTFM satisfied the 35 U.S.C. § 287 notice requirement as to JSP because the trademark license agreement between GTFM (as licensor) and JSP (as licensee) was "confidential," i.e., because "HHI could not have discerned the relationship between JSP and GTFM from any publicly available documents." The majority expresses concern that without such a rule, an infringing party could thwart section 287 notice by padding itself with "layers of corporate disguise." I share the majority's desire to deter parties from attempting to collude to hide an infringer's identity or to shield an infringer from notice by burying it among corporate relatives. Here, however, there is no evidence of such collusion between GTFM/FUBU and JSP, nor any corporate relationship between them from which to draw any possible inference of an attempt to "disguise" JSP. In fact, the only evidence of a relationship between JSP and GTFM or FUBU is the trademark license agreement itself and the quality control GTFM exercised pursuant thereto.

It is true that neither the existence nor the terms of the GTFM–JSP trademark license were publicly available. However, such is presumably the case with many, if not most, trademark license agreements. The majority's rationale would appear to sweep in all such agreements, whether or not between related parties and without regard to whether confidentiality (i.e., mere non-publication) was motivated by legitimate business concerns. That GTFM had the right to, and did, exercise quality control over the shoes produced by JSP is similarly unremarkable, since a trademark licensor "is obliged to maintain some control over the quality of the licensed property as an incident of valid licensing or risk abandonment of its mark." *Twentieth Century Fox Film Corp. v. Marvel Enter., Inc.*, 277 F.3d 253, 259 (2d Cir.2002) (citing *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir.1959)).

Nor is there any equitable justification for the result the majority reaches on the present facts. HHI, whose obligation to give notice arose from its own failure to mark its licensed products, gave no notice to any of those concerned here until after the patent was declared invalid, and let four weeks (including the remaining portion of the patent's term) pass after the resolution of its successful appeal before so advising Daymond Aurum. Meanwhile, JSP—the party whose liability turns on whether HHI fulfilled its notice obligation—was unaware of HHI, its patent, and its communications with Aurum, at least as far as the evidence suggests.

Consequently, I cannot join the majority's disposition as to JSP.

As for the judgment in FUBU's favor, the district court correctly held that even if GTFM is the alter ego of FUBU and HHI could establish that GTFM exercised control sufficient to cause JSP to commit the acts alleged to constitute infringement, GTFM is not liable for inducement on the facts of this case as a matter of law. To prevail on an inducement theory, HHI must establish that GTFM's "actions induced infringing acts *and* that [it] knew or should have known [its] action would induce actual infringements." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990) (emphasis in original). In particular, a patentee cannot succeed under 35 U.S.C. § 271(b) merely by proving that a defendant had " 'knowledge of the acts alleged to constitute infringement.' " *Warner–Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir.2003). Accordingly, where corporate officers had a "good faith belief" that the corporation's product did not infringe based on advice of counsel obtained after learning of the patent at issue, we reversed a judgment of section 271(b) liability. *Manville Sales*, 917 F.2d at 553 ("There is simply neither compelling evidence nor any findings that the officers had specific intent to cause another to infringe.").

Here, it is undisputed that FUBU/ GTFM first learned of the '895 patent in a July, 24, 1998 letter from HHI's counsel, who advised in the same letter that "the United States District Court for the Eastern District of Louisiana recently held that the '895 patent was invalid, finding that the claims had been impermissibly broadened during the reexamination of the patent." Although we subsequently reversed that judgment of invalidity, *Hockerson–Halberstadt, Inc. v. Converse, Inc.*, 183 F.3d 1369 (Fed.Cir.1999), the patent expired one week after our disposition, and HHI did not notify GTFM of our ruling until three weeks after the expiration. Thus, the trial court here correctly regarded GTFM's reliance—throughout the remaining term of the patent—on notice of a judgment of invalidity sent by counsel for the owner of the patent in question as at least as sound (for purposes of inducement liability) as reliance on an opinion of counsel. The mere fact that HHI advised that it was "currently appealing [the invalidity] decision" does not alter the fact that GTFM first learned of the patent and learned that it had been adjudged invalid at the same time, that the judgment of invalidity endured for all but one week of the residual term of the patent, and that HHI did not advise it we had held otherwise until three weeks after the patent expired. Thus, GTFM could not have known its "actions would induce actual infringement" while infringement (by JSP or anyone else) of the '895 patent could still have occurred. Accordingly, and because (as the majority correctly notes) GTFM's actions cannot support a claim of direct infringement, any error in the district court's denial of HHI's motion for leave to amend to add GTFM as a party was harmless.

I would thus affirm the district court in all respects.