HOCKERSON–HALBERSTADT, INC., Plaintiff–Appellant,

v.

CONVERSE INC., Defendant–Appellee.

No. 98–1501.

United States Court of Appeals, Federal Circuit.

July 20, 1999.

Rehearing Denied Aug. 12, 1999.

Richard E. Backus, Flehr Hohbach Test Albritton & Herbert LLP, of San Francisco, California, argued for plaintiff-appellant. With him on the brief was Lisa Marie Schull. Of counsel was James E. Uschold, of New Orleans, Louisiana.

Alan H. Norman, Howell & Haferkamp, L.C., of St. Louis, Missouri, argued for defendant-appellee. With him on the brief were John M. Howell and Anthony G. Simon.

Before RICH,* RADER, and GAJARSA, Circuit Judges.

RADER, Circuit Judge.

The United States District Court for the Eastern District of Louisiana invalidated U.S. Patent No. 4,322,895 (the '895 patent) on the ground that Hockerson–Halberstadt, Inc. (HHI) impermissibly broadened its claims during reexamination. *See Hockerson–Halberstadt, Inc. v. Nike, Inc.,* 4 F.Supp.2d 573 (E.D.La.1998). Because Converse has not shown that HHI's reexamined claims encompass subject matter beyond the original claims, this court reverses and remands.

**I.**

The '895 patent originally issued on April 6, 1982. The patent, "Stabilized Athletic Shoe," claims a shoe that provides additional stability during running. According to the patent, the midsole design of prior-art shoes did not provide adequate stability. Fig. 2 of the patent illustrates a rear view of prior-art running shoes:

PRIOR ART

FIG.— 2

The figure shows a shoe upper (12) mounted above a sole (14). The sole has a pyramid shaped midsole (16) with outwardly-flaring sides. In such a design, any supination or pronation by the runner compresses the sole as indicated by the arrows in Fig. 2. This compression results in a lack of stability and control for the runner's heel.

To solve this problem, the patent secures a support band (38) to the upper rim of the midsole (32) and the sides of the heel cup (26), as shown in the rear view of Fig. 6:

---

* Circuit Judge Rich heard oral argument in this appeal and participated in consideration of the case, but died on June 9, 1999, and did not participate in the final decision.

FIG.—6

According to the patent, this support band stabilizes the heel cup. If a runner's heel lands off center, the support band resists flexing to the side. The runner's foot, then, returns to a more stable position and better absorbs shock. The patent teaches that the support band can be formed "integral with the upper rim of the midsole" as shown in Fig. 6, or can be "a separate piece which is secured as by fusion to the sole during manufacture." Col. 3, ll. 14–25.

In 1991, HHI filed suit against Nike, Inc., Reebok International, Ltd., Hyde Athletic Industries, Inc., L.A. Gear, Inc., Brooks Shoe, Inc., and Kinney Shoe Corp. alleging infringement of the '895 patent. Reebok requested reexamination of the '895 patent in view of various prior art references. The United States Patent and Trademark Office (PTO) decided that the references raised a new issue of patentability and granted Reebok's request. During reexamination, HHI amended both the written description and the claims. In the written description, HHI added the following language describing the shoe structure:

The heel portion is pyramid shaped in lateral cross section with a lower rim having opposite side [sic] which flare outwardly. The lateral sides of the pyramid are not shown in the cross section of Fig. 6 because in the preferred embodiment they merge with the support band.

In a subsequent telephone interview with the examiner, HHI made similar statements summarized in a March 22, 1994 Telephone Interview Summary: "In Fig. 6 the pyramid is there, but one can only see the top and bottom sides. · Patent Owner's attorney further stated that this is clear from the specification and drawings which show that the invention starts with the prior art pyramid-shaped midsole. . . ."

HHI amended claim 1 as follows:

1. An Athletic Shoe comprising a sole having a midsole [with a forefoot and heel portions] *formed of a resilient force-absorbing material,*

   *an outsole mounted below the midsole, said outsole being formed of a durable material for contact with a surface,*

   an upper mounted on the sole, the upper having a counter forming a heel cup having exterior sidewalls *with lower edges,*

a support band carried on the upper rim of the midsole and secured about the sidewalls of the heel cup,

said band extending upwardly and merging with the vertical midspan of the heel cup for supporting and stabilizing the heel cup relative to the sole during contact of the sole onto the surface when in use,

*said midsole comprising a forefoot portion and heel portion means, said heel portion means being pyramid shaped in lateral cross section with a lower rim having opposite sides which flare outwardly to locations which lie sufficiently laterally beyond the lower edges of the heel cup for substantially stabilizing the shoe during initial contact on the surface along one side of the sole,*

the opposite sides of the lower rim of the heel portion *means* having a lateral width greater than the lateral width of the heel cup midspan, and

the *midsole and* support band *having wall means which* inclines upwardly from the lower rim of the heel portion *means* to the heel cup midspan for resisting flexing of the [side] *sidewalls* of *the* heel cup relative to the sole during said initial contact on the surface along one side of the sole.

The PTO issued a reexamination certificate on August 8, 1995.

In 1996, HHI filed suit against Converse. The district court consolidated the suit with the original action against Nike and the others. Converse moved for summary judgment of invalidity of all claims of the '895 patent for violation of 35 U.S.C. § 305 (1994). That section states: "No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter." To illustrate the alleged violations of § 305, the parties referred to two figures supplied to the district court by HHI during summary judgment briefing:

 

These figures show two possible locations of the support band (38) in relation to the midsole (32). In Fig. A, the support band rests atop the midsole, while in Fig. B, the support band surrounds the midsole.

Arguing that HHI had impermissibly broadened the claims, Converse emphasized the following amended limitation: "the *midsole and* support band *having wall means which* inclines upwardly from the lower rim of the heel portion *means* to the heel cup midspan." The original claim, · Converse noted, required that the support band incline upwardly "from" the lower rim of the heel portion, meaning that the support band must "start from" the lower rim. Such a construction covers Fig. B above, in which the support band (38) starts from the lower rim of the midsole (32), but not Fig. A. The amended claim, Converse continued, requires only that the midsole and support band together form a wall means that inclines upwardly from the lower rim. In other words, the amended claim allows the support band to start at some location other than the lower rim of the heel portion so long as the wall means starts at the lower rim. Under that view, the amended claim covers both Figs. A and B and is thus broader than the original claim.

HHI responded that the word "from" in the original claim does not mean "starting from" but rather "in a direction from." Thus, the original claim did not require the support band to start at any particular location. It required only that the support band incline "in a direction from" the lower rim of the heel portion to the heel cup midspan. Under that interpretation, both the original and amended claims cover both Figs. A and B. Thus, HHI argued, it did not broaden the claims.

The district court adopted Converse's proposed construction of "from" to mean "starting from." Thus, the district court held that HHI impermissibly broadened its claim by dropping the requirement that the support band start from the lower rim of the heel portion. HHI moved for reconsideration of the district court's decision, advancing a different claim construction than the one it argued in opposition to Converse's motion. HHI argued that both the original and amended claims require the support band to be "carried on" the upper rim of the midsole. According to HHI, only Fig. A satisfies this requirement. Thus, HHI concluded, neither the original claim nor the amended claim covers Fig. B. The district court denied HHI's reconsideration motion.

On appeal, HHI advances a claim construction different from either of those advanced below. HHI now accepts that the original claim does not cover Fig. A because the support band in that figure does not start from the lower rim of the heel portion. HHI argues, however, that the amended claim also does not cover Fig. A because the midsole is not pyramid shaped as required by the amended claim. Thus, the claims have not been broadened. For its part, Converse advances the same arguments accepted by the district court, namely, that the reexamined claim is broader than the original claim because it only requires the wall means—not the support band—to start from the lower rim of the heel portion. Converse also contends that HHI waived its newest claim construction by not presenting it to the district court.

## II.

Whether amendments made during reexamination enlarge the scope of a claim is a matter of claim construction. *See In re Freeman,* 30 F.3d 1459, 1464, 31 USPQ2d 1444, 1447 (Fed.Cir.1994). Claim construction is a matter of law that this court reviews without deference to the trial court. *See Cybor Corp. v. FAS Tech., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc).

## III.

In determining whether a patentee broadened a reexamined claim under 35

U.S.C. § 305, this court uses the same test as for reissue claims, *see In re Freeman,* 30 F.3d at 1464, namely:

> A claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent. A reissue claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects.

*Tillotson Ltd. v. Walbro Corp.,* 831 F.2d 1033, 1037 n. 2, 4 USPQ2d 1450, 1453 n. 2 (Fed.Cir.1987) (internal citations omitted). Stated another way, a "claim is enlarged if it includes within its scope any subject matter that would not have infringed the original patent." *In re Freeman,* 30 F.3d at 1464.

■ As a preliminary matter, this court decides that HHI has not waived the claim construction it advances on appeal. The recent case of *Key Pharmaceuticals v. Hercon Laboratories Corp.,* 161 F.3d 709, 48 USPQ2d 1911 (Fed.Cir.1998) presented a similar issue. In *Key,* Hercon challenged on appeal the very claim construction it convinced the trial court to adopt. Finding Hercon's position "highly questionable," this court noted: "Ordinarily, doctrines of estoppel, waiver, invited error, or the like would prohibit a party from asserting as 'error' a position that it had advocated at the trial." *Id.* at 715. However, because this court had not issued an opinion publicly condemning this behavior and because Key did not object, the *Key* court exercised an "abundance of fairness" and revisited the claim construction issue. *See id.* at 715–16.

The parties completed briefing in the case at bar on November 19, 1998, about a week before this court's November 25, 1998 decision in *Key.* Thus, the present parties, as in *Key,* did not have the benefit of an opinion of this court noting the impropriety of switching claim constructions on appeal. Accordingly, this court again exercises an abundance of fairness and reviews the correctness of the district court's claim construction.

■ As far as it goes, the district court's analysis is correct. The original claim required that the support band incline upwardly from the lower rim of the heel portion. This court accepts the district court's interpretation of "from"—which neither party contests on appeal—to mean "starting from." Under that interpretation, the original claim covers only Fig. B,[1] which depicts such a support band. The amended claim element, however, does not limit itself to a support band that starts from the lower rim. Rather, it allows the midsole and support band together to form a wall means that starts from the lower rim. Thus, that element, standing alone, would cover the configurations of both Figs. A and B.

■ Proper claim construction, however, demands interpretation of the entire claim in context, not a single element in isolation. Therefore, this analysis cannot end without consideration of the rest of the amendments made during reexamination. In particular, HHI amended the claim to recite that the heel portion means is "pyramid shaped in lateral cross section with a lower rim having opposite sides which flare outwardly." This additional limitation constrains the amended claim to cover, like the original claim, only the Fig. B configuration.

■ Specifically, the written description describes the midsole of the prior art shoe configuration of Fig. 2 as pyramid

---

1. Because the district court relied on Figs. A and B submitted by HHI during summary judgment briefing, and because on appeal both parties couch their arguments in terms of these figures, this court will also use them as a vehicle for analyzing the subject claims.

shaped. *See* col. 2, ll. 50–52. Although "trapezoidal" or some other geometric term might better describe the shape of the Fig. 2 midsole, patentees may choose their own descriptive terms as long as those terms adequately divulge a reasonably clear meaning to one of skill in the art. *See Digital Biometrics v. Identix, Inc.*, 149 F.3d 1335, 1344, 47 USPQ2d 1418, 1424 (Fed.Cir.1998) ("The written description is considered, in particular to determine if the patentee acted as his own lexicographer, as our law permits, and ascribed a certain meaning to those claim terms."). In this case, HHI has assigned a clear meaning to the phrase "pyramid shaped," namely, the shape of the midsole in the prior art shoe of Fig. 2. By using the same phrase in the amended claim, HHI invoked the definition it assigned to that phrase in the written description.

Indeed, the claim language as a whole supports the meaning given to the term "pyramid shaped" by the written description. For instance, other language in the claim requires the lower rim of the heel portion to have opposite sides that "flare outwardly." The written description uses almost identical language to describe the midsole shape of Fig. 2: "The sole has a pyramid-shaped midsole 16 which is characterized in having an *outwardly flared lower rim* 15." Col. 2, ll. 50–52 (emphasis added). This parallel use of the "flare outwardly" language in both the claim and written description leaves no doubt about the shape HHI intended to invoke in the amended claims.

The prosecution history also supports this interpretation. During reexamination, HHI added language to the written description to note that the lateral sides of the pyramid do not appear in Fig. 6 because the preferred embodiment merges the midsole with the support band. Nonetheless, the written description explains, the heel portion is "pyramid shaped in lateral cross section." The prosecuting attorney further confirmed in a telephone interview that "the invention starts with the prior art pyramid-shaped midsole . . . ."

Under this interpretation, the amended claim does not cover Fig. A. Not only is the midsole (32) of Fig. A not "pyramid shaped" as the amended claim requires, but the lower rim does not "flare outwardly." Thus, although the "wall means" limitation would appear to cover the Fig. A shoe construction, the "pyramid shaped" limitation prevents such coverage. Moreover, Converse has not presented this court any other possible shoe configurations that would fall within the scope of the amended claim, but would not fall within the scope of the original claim. Nor can this court conceive of any. Viewing the claim amendments in conjunction, then, this court holds that the amended claim does not encompass any subject matter beyond that encompassed by the original claim.

That said, this court hastens to clarify a key point. From the above analysis, an observer might conclude that the reexamination broadened the claim in one respect (by amendment of the "midsole and support band having wall means" limitation) and narrowed it in another respect (by addition of the "said heel portion means being pyramid shaped" limitation). That situation, which would violate 35 U.S.C. § 305, did not occur in this case. These limitations do not exist independently, but rather operate together to define the same aspect of the claim. The "pyramid shaped" limitation constrains the scope of the "wall means" limitation, preventing the overall claim from covering a shoe structure such as that shown in Fig. A.

Accordingly, because the district court erred in determining that HHI impermissibly broadened its claims during reexamination, this court reverses and remands for further proceedings.

## COSTS

Each party shall bear its own costs.

*REVERSED and REMANDED.*