**R.H. MURPHY CO., INC.,**

v.

**ILLINOIS TOOL WORKS, INC.,**

v.

**R.H. Murphy Co., Inc.**

**No. CIV.A.98–CV–10774–RGS.**

United States District Court,
D. Massachusetts.

Nov. 5, 2003.

John H. Pearson, Pearson & Pearson, LLP, Lowell, MA, Kevin Gannon, Robert E. Rigby, Jr., Thomas C. O'Konski, Cesari & McKenna, LLP, Boston, MA, for Plaintiff.

David J. Byer, John D. Lanza, Testa, Hurwitz & Thibeault, LLP, Joan M. Griffin, Cooke, Clancy & Gruenthal, Boston, MA, Frederick L. Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, Gerald Levy, James E. Marina, Kane, Dalsimer, Sullivan, New York, NY, Lawrence R. Robins, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Cambridge, MA, for Defendant.

*MEMORANDUM AND ORDER ON THE MOTION OF ILLINOIS TOOL WORKS, INC. FOR SUMMARY JUDGMENT ON THE ISSUE OF INVALIDITY*

STEARNS, District Judge.

On May 4, 1998, R.H. Murphy Co., Inc. (Murphy) brought this non-jury patent case against Illinois Tool Works, Inc.

(ITW), alleging that ITW's manufacture and sale of trays used to store, ship, and inspect ball grid array (BGA) integrated circuit packages infringed United States Letters Patent 5,400,904 (the '904 patent).[1] The '904 patent was awarded to Robert H. Murphy and Roy E. Matson III, on March 28, 1995, for the invention of a flippable tray system that allows unfettered access (typically by robot manipulators) to the tops and bottoms of BGA circuits during the manufacturing and inspection process.

On June 24, 1998, ITW filed a counterclaim seeking a declaratory judgment of noninfringement. On February 4, 2000, Murphy requested a reexamination of the '904 patent pursuant to 35 U.S.C. §§ 302–307.[2] On January 16, 2001, the Patent and Trademark Office (PTO) granted Murphy a reexamination certificate for the '904 patent deleting claims 1, 2, 6, and 15–18, amending claims 3–5, 7, 9, 11, and 14, and adding new claims 19–22.

On January 25, 2002, ITW moved for summary judgment arguing that: (1) Murphy's four (related) common-law claims should be dismissed because Murphy could not show any damages resulting from ITW's publication of an allegedly defamatory letter; and (2) that Murphy had impermissibly broadened claims 7 and 11 of the '904 patent during the reexamination proceeding thereby rendering the patent invalid. On September 26, 2002, the court heard argument on Murphy's common-law claims, but deferred a hearing on the invalidity issue until after the court had had an opportunity to consider claim construction. On January 23, 2003, the court held a hearing under the directives of *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). On October 9, 2003, the court heard the invalidity argument. At the close of the hearing, the court ruled that claim construction issues would be decided within the context of a non-jury trial scheduled for December 15, 2003. It also allowed ITW's motion to dismiss Murphy's claims of unfair competition, intentional interference with contractual relations, and intentional interference with advantageous relations, while finding Murphy's defamation claim saved by New Hampshire's *per se* damages rule. This decision will address the invalidity argument.

■■■■ ITW argues that claims 7 and 9 of the reexamined patent are invalid because their scope is broader than the claims of the original patent. (Under 35 U.S.C. § 305, "[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter."). In order to determine whether a patentee improperly broadened a reexamined claim in violation of 35 U.S.C. § 305, the court applies the same test as for reissue patents.

A claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent. A reissue claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects.

*Hockerson–Halberstadt, Inc. v. Converse, Inc.*, 183 F.3d 1369, 1373–1374 (Fed.Cir. 1999). A court should nonetheless be mindful of the fact that a "[p]roper claim construction, however, demands interpretation of the entire claim in context, not a single element in isolation. Therefore, this analysis cannot end without consideration of the rest of the amendments made during reexamination." *Id.* at 1374.

---

1. Similar actions were also filed in Japan and Malaysia.

2. This case was stayed during the reexamination proceeding.

*Claim 7*

■   Independent reexamination claim 7 of the '904 patent is derived from independent claim 6 and dependent claim 7 of the original patent. As such, reexamination claim 7 cannot be broader in scope than the two original claims construed as a whole. ITW argues that reexamination claim 7 fails the test because claim 6 of the original patent stated that:

> said **framework means** in adjacent stacked strays [sic] stabilize the position of the integrated circuit component transverse to said framework means within a corresponding storage pocket area . . .,

while reexamination claim 7 in section F states that:

> said **first and second stabilizing means** of said stacked first and second trays interengage to stabilize the position of the integrated circuit component transverse to said framework means within a corresponding storage pocket area . . . .
>
> [Emphasis added].

ITW argues that under the original patent, the framework of the tray stabilizes "the position of the integrated circuit component," while under the reexamined patent, the "first and second stabilizing means" perform the same function. ITW contends that the difference is critical because under the original claim 7 the framework means alone provided stabilization, while reexamined claim 7 could include tray systems that stabilize the circuits with the framework means or with some other component of the tray's design.[3]

The problem with ITW's argument is that it does not take into account either the full text of claim 7 or the prosecution history. During the reexamination proceeding, the PTO commented that Murphy's proposed claim 7, which described a first and second stabilizing means "formed with" the framework means, while deleting from claim 1 the specification that a function of the framework means was to stabilize the position of the circuit component, broadened the meaning of the terms "first and second stabilizing means." According to the examiner, the substitution of the phrase "formed with" for the phrase "of the framework means" meant that "the function, for stabilizing the position of a ball grid array integrated circuit component [was] not ascribed to the *framework* means" as it was in the original patent. In other words, the PTO made the same criticism that ITW advances now. In response to the PTO, Murphy amended claim 7, sections E and F, by modifying the terms first and second stabilizing means with the phrase "of said framework means." The PTO thereafter granted the reexamination certificate.

The import of the modification is clear. First and second stabilizing means "of said framework means" signifies that the "first and second stabilizing means" are components of the framework means and not separate or independent structures. Consequently, the stabilizing function is performed by the framework of the tray under the reexamined patent in the same way that it was under claims 6 and 7 of the original patent.

*Claim 11*

■   ITW's argument as to claim 11 suffers from the same defect. Claim 11 of the original patent, which incorporated elements of claim 6, stated that:

> wherein each of said wall means includes a central portion, corner extension at each intersection of said wall means ex-

---

**3.** While the terms "first and second stabilizing means" and "framework means" are awkward and difficult to visualize, finding words to describe simple things is often a devilish task.

tending perpendicularly to one side of the first and second support planes . . . ,

while reexamination claim 11 states:

wherein each of said wall means includes a central portion, **one of said first and second stabilizing means includes** corner extensions at each intersection of said wall means extending perpendicularly to one side of the first and second support planes . . . .

[Emphasis added].

ITW argues that while the original patent required each of the wall means to have certain features, such as corner extensions, under reexamined claim 11 only one of the first and second stabilizing means need contain such properties. In response, Murphy argues persuasively that the full text of reexamined claim 11 makes clear that there is no distinction between the original claim 11 and the reexamined claim 11. The fuller text of reexamined claim 11 states:

wherein each of said wall means includes a central portion, **one of said first and second stabilizing means includes** corner extensions at each intersection of said wall means extending perpendicularly to one side of the first and second support planes and central recess between said corner extensions **and the other of said first and second stabilizing means includes** central extensions located centrally of each said wall means and extending perpendicularly to one side of the first and second support planes whereby said corner extensions and said central extensions stabilize the integrated circuit component and whereby said central extensions of one of the stacked first and second trays are adapted to be received in said central recesses of the other tray to interengage with the

corner extension of the other of said first and second stacked trays.

It is clear from this language that both versions of claim 11 require the same number of corner extensions and, therefore, no improper broadening of the patent occurred.

ITW also argues that the language of reexamined claim 11 replacing "wall means" with "stabilizing means" broadened the patent in the same way that replacing "framework means" with "first and second stabilizing means" broadened claim 7. According to ITW, this is so because the stabilizing means under reexamined claim 11 could be accomplished by either the wall means (as in the original patent) or by some independent structure. To illustrate its point at the hearing, ITW offered a drawing of a tray that it argued would be covered by reexamined claim 11 but not the original claim 11 because the stabilizing function is performed by tabs that are separate from the framework means or wall means.

If claim 11 is read in its entirety, it is clear that the stabilizing means is limited to a stabilizing means "formed with said framework means," and not with structurally divorced tabs or other protuberances. So restricted, the stabilizing function as described in reexamined claim 11 is consistent with the original patent description of a stabilizing function accomplished by a framework means which "include[d] a plurality of intersecting wall means."[4]

## ORDER

For the foregoing reasons, ITW's motion for summary judgment as to the inval-

---

4. Murphy notes that this same conclusion was reached by the PTO during the contested re-

examination proceeding.

idity of the reexamined '904 patent is *DE-NIED.*

SO ORDERED.